David Henderson
LAW OFFICES OF DAVID HENDERSON
3003 Minnesota Drive, Suite 203
Anchorage, AK 99503
Phone: 907-677-1234
dh@henderson-law.com
Attorney for Jane Doe (J.R.F.)

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| Jane Doe (J.R.F.), an individual,<br><br>Plaintiff,<br><br>v.<br><br>SECOND STREET INVESTMENTS<br>LLC D/B/A ANCHORAGE UPTOWN<br>HOTEL D/B/A ANCHORAGE<br>UPTOWN SUITES<br><br>Defendants. | <br><br><br><br><br><br><br><br><br><br>Case No. _____. |

## PLAINTIFF'S ORIGINAL COMPLAINT
## TRIAL BY JURY DEMANDED

Jane Doe (J.R.F.), Plaintiff in the above-styled and numbered cause, files this

Original Complaint against SECOND STREET INVESTMENTS LLC d/b/a Anchorage

Uptown Hotel d/b/a Anchorage Uptown Suites (hereinafter referred to as "Defendant") as

Defendant, and would respectfully show the Court and jury as follows:

## SUMMARY

1.     Jane Doe (J.R.F.) files this civil lawsuit seeking compensation for the harm she suffered as a result of the sex trafficking she endured in a hotel owned, operated, maintained, and controlled by Defendant and their agents and employees.

2.     Sex trafficking is the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of causing the person to engage in a commercial sex act through force, fraud, or coercion.[1]

3.     Commercial sex act means any sex act, on account of which anything of value is given to or received by any person.[2] Traffickers or 'pimps' use threats, violence, manipulation, lies, debt bondage, and other forms of coercion to compel victims to engage in commercial sex acts against their will.

4.     Sex trafficking has become a public health crisis that has reached epidemic proportions in the United States. It is now widely recognized, including by Congress and many state legislatures, that combating sex trafficking requires more than just criminal penalties for pimps and sex buyers.

5.     Since 2003, federal law, through the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §1581, et seq, has provided victims of sex trafficking a civil remedy against perpetrators of criminal sex trafficking.

---

[1] 18 U.S.C. §1591; 22 U.S.C. § 7102.
[2] 18 U.S.C. §1591(e)(3).

*Jane Doe v. Second Street Investments, LLC, et al*                                    2

6.     In 2008, Congress recognized the need to extend liability beyond sex buyers and sellers and intentionally expanded the scope of the TVPRA to reach those who—while not criminally liable under the TVPRA—financially benefit from participation in a venture that they know or *should know* engages in criminal sex trafficking.

7.     As discussed herein, Defendant derived a financial benefit from facilitating sex trafficking by providing ventures where traffickers could exploit victims, including victims like Jane Doe (J.R.F.), with minimal risk of detection or interruption.

8.     Defendant continued supporting traffickers, including Jane Doe (J.R.F.)'s trafficker, despite evident and apparent signs of widespread and ongoing sex trafficking at its hotels and specifically at the Anchorage Uptown Suites located at 1680 Berlin Turnpike, Wethersfield, CT, 06109. Defendant was, therefore, knowingly receiving a benefit from participation in a venture that Defendant knew or should have known was engaged in sex trafficking.

## **PARTIES**

9.     Plaintiff, Jane Doe (J.R.F.) is a natural person who is currently a resident of Alaska. She may be contacted through her lead counsel, whose information is contained below.

10.     Jane Doe (J.R.F.) is a victim of sex trafficking under 18 U.S.C. §1591(a) because she was harbored, transported, or provided for the purpose of causing her, through force, fraud or coercion, to commit a commercial sex act.

11. Given the nature of the allegations in this lawsuit, there is a collective and compelling interest in not publicly revealing the identity of Jane Doe (J.R.F.)

12. Defendant SECOND STREET INVESTMENTS LLC is an Alaska limited liability company with its principal place of business in Alaska. It can be served through its registered agent, Leann Jack at 4011 Marquis Dr., Anchorage, AK 99502, or wherever they may be found.

13. Upon information and belief, the Defendant either directly or through the acts of predecessors for which they are responsible, owned, operated, controlled and/or managed the Anchorage Uptown Suites d/b/a Anchorage Uptown Hotel ("Anchorage Uptown Suites") located at 235 E. 2nd Ct., Anchorage, Alaska 99501.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the TVPRA.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because one or more Defendants reside in this district.

## STATEMENT OF FACTS

**I.      Jane Doe (J.R.F.) is a Survivor of Unlawful Sex Trafficking at a Hotel Owned, Operated, Managed and Controlled by Defendant.**

17.      Jane Doe (J.R.F.) is a survivor of sex trafficking. Her trafficking began around 2003 and continued through December 2014. Jane Doe (J.R.F.) was trafficked through force and coercion by her trafficker to engage in numerous commercial sex acts. Jane Doe (J.R.F.)'s trafficker groomed her into believe that he cared for her and wanted to be her boyfriend. After her trafficker gained her trust through false romantic intentions, he forced her to engage in commercial sex for his financial benefit. Jane Doe (J.R.F.)'s trafficker controlled her by physical violence. Jane Doe (J.R.F.) was terrified to leave as she was scared of what physical harm, he could cause her if she did. At various times and in an ongoing manner between 2008 through December 2014, Jane Doe (J.R.F.) was trafficked at the Anchorage Uptown Suites.

18.      Jane Doe (J.R.F.)'s trafficking repeatedly occurred in the rooms of this Anchorage Uptown Suites and was facilitated by Defendant.

19.      At various times from 2008 through December 2014, Jane Doe (J.R.F.) was trafficked at the Anchorage Uptown Suites located at 235 E. 2nd Ct., Anchorage, AK 99501 (the "Subject Hotel" or "Anchorage Uptown Suites").

20.      Jane Doe (J.R.F.)'s sexual exploitation repeatedly occurred in rooms of this Anchorage Uptown Suites and was facilitated by the Defendant.

*Jane Doe v. Second Street Investments, LLC, et al*                                                    5

## II.   The Hotel Industry's Role in Sex Trafficking and Defendant' Knowledge of the Problem.

21.   The widely known and pervasive relationship between sex trafficking and the hotel industry necessarily shapes what Defendant knew or should have known regarding the trafficking at their hotel property, including the trafficking of Jane Doe (J.R.F.).

22.   Sex slavery is pervasive in the United States, and hotels are the primary place where it happens.[3] For years, sex traffickers have "been able to reap enormous profits with little risk when attempting to operate within hotels."[4] In 2014, 92 percent of calls to the Human Trafficking Hotline involved reports of sex trafficking taking place at hotels.[5] Hotels have been found to account for over 90 percent of commercial exploitation of children.[6]

---

[3] "This is not only a dominant issue, it's an epidemic issue." *See* Jaclyn Galucci, *Human Trafficking is an Epidemic in the U.S. It's Also Big Business*, Fortune, April 2019, at https://fortune.com/2019/04/14/human-sex-trafficking-usslavery/ citing Cindy McCain, who chairs the McCain Institute's Human Trafficking Advisory Council. "It's also something that is hiding in plain sight. It's everywhere—it's absolutely everywhere." *Id*
[4] *See Human Trafficking in the Hotel Industry*, Polaris Project, February 10, 2016, at https://polarisproject.org/blog/2016/02/human-trafficking-in-the-hotel-industry/.
[5] Michele Sarkisian, *Adopting the Code: Human Trafficking and the Hospitality Industry*, CORNELL HOSPITALITY REPORT, 15(15), 3-10 (2015), available at: https://humantraffickingsearch.org/wp-content/uploads/2019/05/Adoptingthecode.report.cornell.pdf
[6] Erika R. George & Scarlet R. Smith, *In Good Company: How Corporate Social Responsibility Can Protect Rights and Aid Efforts to End Child Sex Trafficking in Modern Slavery*, 46 N.Y.U. J. INT'L L. & POL. 55, 92 (2013).

*Jane Doe v. Second Street Investments, LLC, et al*                                          6

23.     Because of this link between hotels and sex trafficking, government agencies and non-profits have devoted significant efforts to educating the hotel industry, including Defendant, on best practices for identifying and responding to sex trafficking.[7]

24.     Multiple agencies and organizations who actively combat sex trafficking, including the United States Department of Homeland Security, the National Center for Missing and Exploited Children, the Polaris Project, the Texas Attorney General, Love 146, and EPCAT, among others, have established recommended policies and procedures for recognizing the signs of sex trafficking.[8]

25.     Some of the recommended policies and procedures intended to reduce or eliminate sex trafficking, which Defendant are aware or should be aware of, include

---

[7] *See, e.g.*, Department of Homeland Security, *Blue Campaign Toolkit*, available at: https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf; National Center for Missing & Exploited Children, *Child Sex Trafficking Overview*, available at: https://www.missingkids.org/content/dam/missingkids/pdfs/CST%20Identification%20Resource.pdf; Love 146, *Red Flags for Hotel and Motel Employees*, https://love146.org/wp-content/uploads/2017/04/Hospitality-Red-Flag-and-Reporting-Love146.pdf; Texas Attorney General, Human Trafficking Red Flags, available at: https://www2.texasattorneygeneral.gov/files/human_trafficking/human_trafficking_red_flags_handout.pdf .

[8] United States Department of Homeland Security Blue Campaign – One Voice. One Mission. End Human Trafficking, https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf (last visited April 13, 2023);National Center for Missing and Exploited Children, https://www.missingkids.org/theissues/trafficking#riskfactors (last visited April 13, 2023); Love 146, *Red Flags for Hotel & Motel Employees*, https://love146.org/wp-content/uploads/2017/04/Hospitality-Red-Flag-and-Reporting-Love146.pdf (last visited April 13, 2023); Texas Attorney General, *Human Trafficking Red Flags*, https://www2.texasattorneygeneral.gov/files/human_trafficking/human_trafficking_red_flags_handout.pdf (last visited April 13, 2023).

*Jane Doe v. Second Street Investments, LLC, et al*                                                    7

learning to identify warning signs and indicators of sex trafficking, including but not limited to:

    a. Individuals show signs of fear, anxiety, tension, submission, and/or nervousness;

    b. Individuals show signs of physical abuse, restraint, and/or confinement;

    c. Individuals exhibit evidence of verbal threats, emotional abuse, and/or being treated in a demeaning way;

    d. Individuals show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

    e. Individuals lack freedom of movement or are constantly monitored;

    f. Individuals avoid eye contact and interaction with others;

    g. Individuals have no control over or possession of money or ID;

    h. Individuals dress inappropriately for their age or have lower quality clothing compared to others in their party;

    i. Individuals have few or no personal items—such as no luggage or other bags;

    j. Individuals appear to be with a significantly older "boyfriend" or in the company of older males;

    k. A group of girls appears to be traveling with an older female or male;

    l. A group of males or females with identical tattoos in similar locations. This may indicate "branding" by a trafficker;

    m. Drug abuse or frequent use of "party drugs" such as GHB, Rohypnol, Ketamine, MDMA (Ecstasy), Methamphetamines, Cocaine, and Marijuana;

    n. Possession of bulk sexual paraphernalia such as condoms or lubricant;

    o. Possession or use of multiple cell phones; and

*Jane Doe v. Second Street Investments, LLC, et al*          8

p. Possession or use of large amounts of cash or pre-paid cards.[9]

26. The signs of sex trafficking in a hotel environment follow well-established patterns and can easily be detected by appropriately trained staff. Tool kits specific to the hotel industry have been developed, which help hotel staff in every position identify and respond to signs of sex trafficking.[10] From check-in to check-out, there are indicators that traffickers and their victims routinely exhibit during their stay at a hotel.

27. The relationship between a pimp and a prostitute is inherently coercive, and the United States Department of Justice and other agencies and organizations have recognized that most individuals involved in prostitution are subject to force, fraud, or coercion.[11] It is also well understood that "prostitution," "sex trafficking," and "child sex trafficking" involve a single common denominator, the exchange of sex for money.

28. The definition of sex trafficking in the TVPRA under 18 U.S.C. §1591(a)(1) incorporates the definition of commercial sex act. Defendant understood the practical and legal association between commercial sex and sex trafficking in a hotel environment. Thus, Defendant knew or should have known that signs of commercial sex (prostitution) activity in their hotels were in fact signs of sex trafficking.[12]

---

[9] *Id.*

[10] Department of Homeland Security, *Blue Campaign Toolkit*, https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf.

[11] *See, e.g.*, *A National Overview of Prostitution and Sex Trafficking Demand Reduction Efforts, Final Report*, https://www.ojp.gov/pdffiles1/nij/grants/238796.pdf; *Prostitution and Trafficking in Women: An Intimate Relationship*, https://www.ojp.gov/ncjrs/virtual-library/abstracts/prostitution-and-trafficking-women-intimate-relationship.

[12] *Id.*

*Jane Doe v. Second Street Investments, LLC, et al*                                      9

29.   Defendant was aware or should have been aware of these signs of sex trafficking when operating, controlling, and managing their hotel properties, when enacting and enforcing policies and procedures applicable to those hotels and when training, educating, and supervising the staff of that hotel.

30.   Defendant was specifically aware that commercial sex in a hotel environment, involving a "pimp," implicitly involves to sex trafficking. Defendant received training and guidance on this. Defendant knew that the link between commercial sex in a hotel environment and sex trafficking was sufficiently strong that reasonable diligence required treating signs of commercial sex activity, particularly with apparent and obvious involvement of a "pimp," as evidence of sex trafficking. Reasonable diligence required Defendant to avoid benefiting from the rental of its rooms for commercial sex because doing so was associated with a strong probability that Defendant were thereby benefiting from the harboring of sex trafficking victims.

31.   The most effective weapon against sexual exploitation and human trafficking is education and training.[13]  As ECPAT concluded:

> The hospitality industry is in a unique position to identify and report human trafficking due to its perceived anonymity. Traffickers believe they can go unnoticed while exploiting victims across the globe in hotels— ranging from budget properties to luxury resorts. From check-in to check-out, there are a number of indicators victims and exploiters exhibit during the time they are on a hotel property.[14]

---

[13] Polaris, *Recognizing Human Trafficking*, https://polarisproject.org/recognizing-human-trafficking/ (last visited April 13, 2023).

[14] ECPAT USA, *Training for Hotel Associates*, https://www.ecpatusa.org/hotel-training (last visited April 13, 2023).  *See also* Carolin L. et al., *Sex Trafficking in the Tourism*

*Jane Doe v. Second Street Investments, LLC, et al*                                                          10

32.     This same conclusion is echoed by others who seek to eliminate sex trafficking in the hospitality industry, including the American Hotel Lodging Association: "Hotel employees who have undergone training are more aware of trafficking when it happens – and are more willing to report it – than those who have not been trained.[15]  In reference to companies like the Defendant, ECPAT observed: "If they do nothing to raise awareness or to prevent child trafficking, they risk becoming an indirect and unintentional conduit for the abuse that takes place."

33.     Given the prevalence of human trafficking in hotels and the abundance of information about how franchisors, owners, operators and hotel employees can identify and respond to this trafficking, it has become apparent that the decision of a hotel chain to continue generating revenue from traffickers without taking necessary steps to identify and prevent trafficking in its hotels is a conscious decision to financially benefit by supporting and facilitating unlawful sex trafficking.

34.     There were also well-established practices for hotels to avoid the facilitation of sex trafficking. For example, End Child Prostitution and Trafficking ("ECPAT-USA") has identified hotel-specific best practices for preventing sex trafficking, such as (1) not permitting cash payments; (2) requiring vehicle information and photo id at check-in; (3) monitoring online sex ads such as Craigslist and Backpage for their hotel name and pictures

---

*Industry*, J. Tourism Hospit. (2015), https://www.longdom.org/open-access/sex-trafficking-in-the-tourism-industry-2167-0269-1000166.pdf.
[15] AHLA, *Free Online Training*, https://www.ahla.com/issues/human-trafficking (last visited April 13, 2023).

of the rooms; (4) changing Wi-Fi passwords in rooms and cafes regularly and blocking websites frequently used to advertise commercial sex on hotel Wi-Fi; (5) watching for a trend of visitors to the same room; (6) being aware of rooms with excess condoms, lubricants, and towels; (7) requiring all visitors to be logged, including guest name, visitor name, arrival time, departure time, and room number; and (8) developing a protocol for response to indicia of trafficking activity.

35.     Defendant had a responsibility to adopt, implement, and adequately enforce policies to avoid facilitating sex trafficking and to train hotel staff to identify and respond to "red flags" of sex trafficking.

36.     Unfortunately, Defendant has made the choice, at all levels, to respond inadequately to their knowledge regarding sex trafficking at their hotel. Instead, Defendant has actively chosen to continue to benefit from sex trafficking of victims like Jane Doe (J.R.F.).

**III.     Sex Trafficking Has Long Been Prevalent at the Anchorage Uptown Suites, and Defendant Has Known About It.**

37.     Defendant's actual knowledge is *not* limited to a general awareness of the problem of sex trafficking in the hotel industry. The Defendant has known, since well before Jane Doe (J.R.F.)'s trafficking, that sex trafficking was ongoing and widespread at the Anchorage Uptown Suites.

**a. Defendant had actual and constructive knowledge of widespread and ongoing sex trafficking at the subject Hotel.**

38.    Defendant was specifically aware that sex trafficking was widespread and ongoing at the Anchorage Uptown Suites.

39.    The Defendant knew or should have known about the sex trafficking pervasive at the Anchorage Uptown Suites based on obvious indicators of this activity.

40.    Defendant knew that a population of traffickers, including Jane Doe (J.R.F.)'s trafficker, repeatedly chose to use the Subject Hotel for their sex trafficking activity. They selected the Subject Hotel because of policies and practices that created a favorable environment for trafficking and because hotel staff turned a blind eye to signs of trafficking. These traffickers followed a repetitive and routine procedure during stays at the Subject Hotel. There were obvious signs of this activity, which were consistent with the well-known "red flags" for sex trafficking in the hospitality industry. As such, Defendant also knew or should have known about the pervasive sex trafficking at the Subject Hotel based on obvious indicators of this activity.

41.    This population of traffickers, including (J.R.F.)'s trafficker, operated with little regard for concealment, due to an implicit understanding between Defendant and the traffickers. This understanding enabled the traffickers to operate openly, as they had found a venue where they could conduct their operations without disruption from Defendant.

42.    Upon information and belief, there were other victims being trafficked at the Subject Hotel at the same time as (J.R.F.) and there were obvious signs these victims were being trafficked.

43.     Based upon information and belief, the conduct of Defendant facilitated the trafficking of a number of victims by a population of multiple traffickers at the Subject Hotel. Defendant developed a continuous business relationship with this population of traffickers who operated at the hotel on a routine and repetitive basis.

44.     Upon information and belief and based on hotel reviews and records of law-enforcement calls, there were multiple trafficking victims exploited at the subject Hotel named herein prior to Jane Doe (J.R.F.)'s trafficking who exhibited "red flags" of trafficking that were observed by hotel staff and management, including paying with cash or prepaid cards, having high volumes of men who not registered guests in and out of their room at unusual times, arriving with few possessions for extended stays, and other signs consistent with the "red flags" of trafficking identified above. Trafficking has a significant effect on its victims, and, upon information and belief, there were obvious "red flags" of trafficking apparent from the appearance, demeanor, and restricted movements of these victims, as well as the nature of these victims' interactions with their traffickers and others, all of which provided notice that these victims were being subject to violence, coercion, control, and exploitation.

45.     All knowledge from the staff at the Subject Hotel is imputed to Defendant. Defendant knew about this widespread and ongoing trafficking at the Subject Hotel, including the trafficking of Jane Doe (J.R.F.), through the direct observations of hotel staff, including management-level staff.

46.     Upon information and belief, in addition to available public sources of information about trafficking and knowledge imputed from hotel staff and management, the Defendant learned or should have learned about the obvious signs of widespread trafficking at the subject Hotel referenced herein, based on non-public sources of information including but not limited to:

      a.  Surveillance of property;

      b.  Internal investigations;

      c.  Customers complaints;

      d.  Monitoring of customer feedback;

      e.  Information received from law enforcement;

47.     Upon information and belief, the Defendant knew or should have known about the widespread trafficking at the Subject Hotel based on:

      a.  The obligation of hotel staff and hotel management to report suspected criminal activity including sex trafficking to the Defendant;

      b.  The Defendant's regular monitoring of online reviews;

      c.  The Defendant's collection and monitoring of customer surveys and complaints;

      d.  The Defendant's regular inspections of the hotel property;

      e.  Information provided to Defendant by law enforcement; and

      f.  Other sources of information available to Defendant.

48.     Upon information and belief, under the Defendant's protocols, which on their face required hotel staff and management to report suspected criminal activity to the Defendant, hotel staff and management were required to report numerous instances of

*Jane Doe v. Second Street Investments, LLC, et al*                                          15

suspected sex trafficking to the Defendant prior to Jane Doe (J.R.F.)'s trafficking based on the numerous "red flags" exhibited by the victims who were exploited at the subject Hotel.

49.    Upon information and belief, the Defendant observed obvious "red flags" of numerous instances of sex trafficking occurring at the Subject Hotel based on their supervision and monitoring of the property.

**b. Defendant knew Jane Doe (J.R.F.) was being trafficked at the Subject Hotel because of the apparent and obvious "red flags" of sex trafficking.**

50.    During the period that Jane Doe (J.R.F.) was trafficked at the Subject Hotel named herein, there were obvious signs that her traffickers were engaged in sex trafficking:

   a. The hotel rooms in which Jane Doe (J.R.F.) was trafficked were frequently paid for with cash or prepaid cards;

   b. Hotel staff would place her and her trafficker in rooms that were away from other guests.

   c. Other girls were trafficked at the same hotel at the same time as Jane Doe (J.R.F.);

   d. Even though Jane Doe (J.R.F.) and her trafficker would stay for multiple days at a time, housekeeping was kept away by using the "Do Not Disturb" door hanger;

   e. Housekeeping staff was prevented from entering the room for regular cleaning, towel exchange and other standard room services;

   f. The trafficker was often present with Jane Doe (J.R.F.) at check in and would linger around the hotel or in the parking lot while she was with a john;

   g. There was heavy foot traffic in and out of Jane Doe (J.R.F.)'s room involving men who were not hotel guests;

   h. Jane Doe (J.R.F.) had multiple johns every day. These individuals entered and left at unusual hours and were present at the hotel for brief periods of time; and

   i. Other obvious signs of trafficking consistent with the modus operandi of her traffickers and which included well known "red flags" for trafficking in a hotel.

*Jane Doe v. Second Street Investments, LLC, et al*                                    16

51. Based upon information and belief, multiple employees at the subject Hotel named herein, including management-level employees, observed, or were made aware of these obvious signs of trafficking while acting within the scope and course of their employment.

52. As such, Defendant knew or was willfully blind to the fact that Jane Doe (J.R.F.) was being trafficked at the subject Hotel property.

53. Given these obvious signs, Defendant knew or should have known about the trafficking of Jane Doe (J.R.F.) based on its policy or protocol that required hotel staff to report suspected criminal activity including sex trafficking.

IV. **Defendant actively facilitated sex trafficking at the Subject Hotel, including the trafficking of Jane Doe (J.R.F.).**

54. Defendant had both actual and constructive knowledge of the trafficking of Jane Doe (J.R.F.) at the Subject Hotel because the trafficking was the direct result of Defendant facilitating her trafficking at the Subject Hotel.

a. **Defendant facilitated the trafficking of Jane Doe (J.R.F.).**

55. Defendant is responsible for the acts, omissions, and knowledge of all employees of the Subject Hotel when operating their  hotel because these acts and omissions were committed in the course and scope of employment, because Defendant ratified these acts and omissions, and because Defendant failed to exercise reasonable care with regard to the hiring, training, and supervision of these employees given the specific risks, known to Defendant, of sex trafficking occurring at these Hotel branded locations including the subject locations.

*Jane Doe v. Second Street Investments, LLC, et al*                                          17

56. Despite having actual or constructive knowledge of widespread and ongoing sex trafficking at the Subject Hotel, Defendant continued renting rooms to these traffickers, including the rooms used to sexually exploit victims like Jane Doe (J.R.F.).

57. Defendant knew or was willfully blind to the fact that Jane Doe (J.R.F.) was being trafficked and, despite this, benefited from continued association with her traffickers by providing them a venue in the form of hotel rooms and related services, to facilitate Jane Doe (J.R.F.)'s sexual exploitation.

58. Defendant also facilitated widespread trafficking at the Subject Hotel, including the trafficking of Jane Doe (J.R.F.), in ways including:

    a. allowing inappropriate and inadequate practices for hiring, training, supervising, managing, and disciplining front-line staff regarding issues related to human trafficking;

    b. inadequate and inadequately enforced sex trafficking notice and training for hotel staff;

    c. choosing not to report known or suspected criminal activity including sex trafficking according to reasonable practices, industry standards, and/or applicable franchisor policies and procedures; and

    d. implicitly encouraging the activities of traffickers by creating an environment where they did not need to incur the burden of taking significant steps to conceal their activities but, instead, could operate without concern for detection or interference by the hotel staff.

59. Upon information and belief, the Defendant participated directly in aspects of the operation of the Subject Hotel that influenced whether and to what extent trafficking occurred at their hotel, including but not limited to the trafficking of Jane Doe (J.R.F.), as follows:

a. The Defendant has publicly assumed responsibility and control over the human trafficking response of the Subject Hotel, including design and implementation of practices to prevent trafficking, safety and security procedures, employee and franchisee education, training, and response, partnership with external organizations, and advocacy;

b. The Defendant retained control over when their hotel would share information with law enforcement and when law enforcement would be contacted about suspected criminal activity at their hotel;

c. The Defendant retained control over the response to trafficking by providing the tools necessary for hotel staff to report suspected human trafficking to the Defendant. The Defendant determined when issues should be escalated to the National Human Trafficking Hotline or law enforcement;

d. The Defendant retained control over determining when additional training or other resources based on a high risk of human trafficking and other related criminal activity are needed;

e. The Defendant expressly retained control to terminate hotel staff based on the response to human trafficking;

f. The Defendant retained control over training on how to spot the signs of and help prevent human trafficking. The Defendant determined whether the training is provided, when it is provided, the content of the training, how the training is delivered, who receives the training, and the consequences if someone does not participate in the training or fails to follow such training;

g. Although they delayed making any reasonable effort to do so, the Defendant acknowledge that they retain control to adopt requirements for their hotel specifically designed to prevent human trafficking and other criminal activity;

h. The Defendant is responsible for adopting, enforcing, and monitoring policies and codes of conduct related to human trafficking at the Subject Hotel;

i. The Defendant maintained control over all details of the terms under which their hotel offered internet services to customers, including dictating the software, hardware, and service provider to be used, setting all policies about use and restrictions on use, and actively collecting and monitoring guest internet usage data. The Defendant dictated whether sites frequently used to solicit clients for sex trafficking victims would be accessible through the internet at the Subject Hotel location;

*Jane Doe v. Second Street Investments, LLC, et al*                                    19

j.  The Defendant retained control over the setting, supervision, overseeing, and enforcement of detailed policies and protocol for housekeeping services at the Subject Hotel location, including policies for how often rooms must be entered, how to respond to guest refusals of entry into rooms, and steps to monitor guest safety issues through housekeeping services; and

k.  The Defendant collected, maintained, and analyzed detailed data regarding housekeeping services at the Subject Hotel location, including trends that would reveal patterns consistent with human trafficking.

60.  Defendant directly participated in and retained day-to-day control over renting rooms at the Subject Hotel by, among other things:

a.  The Defendant controlled all details of the guest reservation, check-in, and payment processes through management and control over all systems used for those processes and adoption of detailed and specific policies governing the means and methods used for each of these processes;

b.  The Defendant directly made reservations for rooms at the Subject Hotel and accepted payment for those rooms through a central reservation system that they controlled and operated.;

c.  The Defendant established and maintained control over a brand-wide "do not rent" system. The Defendant set all policies related to use of this system and dictated the day-to-day details of reservations at the subject Hotel through detailed policies that it established regarding use of this "do not rent" system;

d.  The Defendant controlled room rates, required discounts, mandatory fees, and rewards program;

e.  The Defendant controlled and restricted the ability of the hotel and staff to refuse or cancel a reservation;

f.  The Defendant controlled and oversaw policies and procedures regarding check-in, payment, and identity verification procedures;

g.  The Defendant collected, retained, monitored, and analyzed detailed data about every guest who stayed at the Subject Hotel location;

h.  The Defendant established detailed policies and protocol that dictated, step-by-step, everything that would happen from the time a guest arrived at the Subject Hotel until they entered their guest room. This included operational directives regarding payment methods, identification requirements, the

*Jane Doe v. Second Street Investments, LLC, et al*                                                      20

number of guests that could be in each room and whether information needed to be collected for each guest, what questions hotel staff should and should not ask, and other matters related to check-in; and

i. The Defendant used a property management system, which was owned, maintained, controlled, and operated by the Defendant, for virtually all aspects of hotel operations regarding room reservations and payment.

61. The Defendant had a direct business relationship with traffickers operating at the Subject Hotel because, among other things, the Defendant directly rented rooms at the hotels, directly received payment, and received real-time guest information. Traffickers further developed a business relationship with the Defendant by developing brand loyalty and intentionally choosing Hotel hotels because it was known they created a favorable environment for trafficking.

62. Despite having actual or constructive knowledge of widespread and ongoing sex trafficking at the subject Hotel, Defendant continued renting rooms to traffickers, including the rooms used to sexually exploit victims, including Jane Doe (J.R.F.).

63. Defendant knew or should have known that Jane Doe (J.R.F.) was being trafficked and, despite this, benefited from continued association with her trafficker by providing them hotel rooms and related services to facilitate Jane Doe (J.R.F.)'s sexual exploitation.

64. Upon information and belief, despite having actual or constructive knowledge of the ongoing sex trafficking at the Subject Hotel location, the Defendant continued participating in a venture at these hotels, with its hotel staff, in a way that it knew

*Jane Doe v. Second Street Investments, LLC, et al*                                    21

or should have known would lead to additional sex trafficking at the hotels, including but not limited to by the following:

    a. The Defendant adopted inappropriate and inadequate practices for selecting, training, supervising, managing, and disciplining franchisees and hotel staff regarding issues related to human trafficking;

    b. The Defendant provided inadequate training on issues related to human trafficking and unreasonably delayed providing training;

    c. The Defendant adopted a safety and security budget and safety and security practices that were clearly insufficient considering the known problem of sex trafficking at their hotel;

    d. The Defendant implicitly approved decisions by the hotel staff not to report or respond to criminal activity including sex trafficking appropriately;

    e. The Defendant continued to use policies, protocols, and practices that had been shown to lead to widespread trafficking at the Subject Hotel location;

    f. The Defendant attracted traffickers by affirmatively creating a favorable venue where access was easy, risks of interference were low, and traceability was minimal;

    g. Despite having specific knowledge of policies that would significantly reduce sex trafficking at its branded locations including the Subject Hotel location, the Defendant declined to implement policies that would likely have the effect of reducing its sex-trafficking related profits or that would require publicly acknowledging the ongoing problem of sex trafficking at its properties;

    h. The Defendant willfully delayed taking obvious and apparent steps to stop facilitating sex trafficking, which they had the ability and responsibility to take sooner;

    i. The Defendant allowed traffickers to reserve rooms using cash, which provided relative anonymity and non-traceability; and

    j. The Defendant provided traffickers with access to internet services in a manner that the Defendant knew or should have known would be used to facilitate trafficking by promoting commercial sex services online.

*Jane Doe v. Second Street Investments, LLC, et al*    22

65.     If Defendant had exercised reasonable diligence when operating their hotel and, in the areas, where it retained control, Defendant would have prevented the Subject Hotel from being used to facilitate widespread and ongoing sex trafficking, including the trafficking of Jane Doe (J.R.F.). Instead, Defendant engaged in the course of conduct that affirmatively facilitated widespread and ongoing sex trafficking, including the trafficking of Jane Doe (J.R.F.).

66.     The Defendant should have known about (J.R.F.)'s trafficking because it retained control over the training of the staff of the Subject Hotel regarding human trafficking and ways to detect and respond to signs of human trafficking. Effective training and education are the most important tools to prevent use of hotel facilities for sexual exploitation and human trafficking. If the Defendant had exercised reasonable diligence in providing training, they would have known about the obvious and apparent sex trafficking, including the trafficking of (J.R.F.) at the Subject Hotel. Thus, under §1595(a) of the TVPRA, constructive knowledge of that trafficking is imputed to the Defendant.

67.     The Defendant should have known about (J.R.F.)'s trafficking because they also retained control over the response of their hotel to human trafficking, including development of policies and procedure regarding detection, disruption of and response to human trafficking. By failing to exercise reasonable diligence in discharge of this duty, the Defendant facilitated sex trafficking, including the sex trafficking of (J.R.F.) at the Subject Hotel. Thus, under §1595(a) of the TVPRA, constructive knowledge of that trafficking is imputed to the Defendant.

*Jane Doe v. Second Street Investments, LLC, et al*                                        23

68.     The Defendant also should have known about (J.R.F.)'s trafficking because they retained the control to adopt and enforce policies on sex trafficking for the Subject Hotel, adopted and enforced inadequate and inappropriate check-in, payment, and identification policies, which facilitated trafficking at the Subject Hotel. The Defendant allowed traffickers to access rooms for the purpose of harboring their victims, including (J.R.F.) Thus, under §1595(a) of the TVPRA, constructive knowledge of that trafficking is imputed to the Defendant.

69.     The Defendant also should have known about (J.R.F.)'s trafficking because they retained control over the security of the Subject Hotel through various means including, upon information and belief, placing and monitoring security cameras, accepting and reviewing and responding to customer complaints, and inspecting the Subject Hotel. They also collected data regarding hotel operations and customers, including names, payment information, payment method, reservation history, wi-fi browsing data, and other details associated with their stay. If the Defendant had used reasonable prudence in monitoring and reviewing this information, they would have known about the ongoing trafficking. Thus, under §1595(a) of the TVPRA, constructive knowledge of that trafficking is imputed to the Defendant.

70.     Jane Doe (J.R.F.) exhibited the kind of obvious signs of sex trafficking that would have been detectable and detected if the Defendant had used reasonable diligence in the aspects of hotel operations over which they retained control.

71.     Moreover, (J.R.F.)'s trafficker was able to operate without interference and without making significant effort at a concealment during repeated visits to the Subject Hotel over an extended period because the Defendant adopted policies and practices that insulated (J.R.F.)'s trafficker from significant risk of detection or disruption.

## V.     Defendant's Ventures at the Hotel.

72.     Through the conduct described above, Defendant knowingly benefited from engaging in a venture with sex traffickers at the Subject Hotel named herein, including Jane Doe (J.R.F.)'s trafficker, as follows:

   a.  Defendant both received benefits, including increased revenue, every time a room was rented at the Subject Hotel location;

   b.  This venture engaged in violations of 18 U.S.C. §1591 through the actions of the criminal traffickers at the Subject Hotel location, which Defendant knew or should have known about;

   c.  Defendant associated with traffickers, including Jane Doe (J.R.F.)'s trafficker, by acting jointly to continue to rent rooms to these traffickers despite having actual or constructive knowledge of their sex trafficking activity;

   d.  Defendant had a mutually beneficial relationship with the traffickers at the Subject Hotel location, fueled by sexual exploitation of victims, including Jane Doe (J.R.F.);

   e.  Sex traffickers, including Jane Doe (J.R.F.)'s trafficker, frequently used the Hotel for their trafficking because of an implicit understanding that the Subject Hotel was an avenue that would facilitate their trafficking, providing minimal interference and lowering their risk of detection. This understanding occurred because of the conduct of Defendant facilitating that trafficking as described throughout this Complaint. This resulted in benefits, including increased revenue, for Defendant;

   f.  Defendant participated in this venture through the conduct described throughout this Complaint, as they were jointly responsible for relevant aspects of hotel operations; and

g. Jane Doe (J.R.F.)'s trafficking at the Subject Hotel was a result of Defendant's participation in a venture with criminal traffickers. If Defendant had not continued participating in a venture that they knew or should have known violated 18 U.S.C. §1591(a), they would not have received a benefit from Jane Doe (J.R.F.)'s trafficking at the Subject Hotel location.

## VI. Defendant is jointly responsible for the trafficking of Jane Doe (J.R.F.).

73.     Defendant was a participant in a joint venture, which involved a common enterprise, profit-sharing, a community of interests, and joint rights of control and management, and are vicariously liable for the violations of the other participants in the joint venture.

74.     Upon information and belief, operation of the Subject Hotel was part of a single unified operation by Defendant. Upon information and belief, Defendant shared a common parent company, were subject to joint control, and operated as an integrated enterprise and/or as alter-egos. Upon information and belief, Defendant acted jointly to own, operate, control, manage, and supervise the subject properties. As an integrated enterprise and/or joint venture, Defendant was separately and jointly responsible for compliance with all applicable laws.

## VII. Defendant are Jointly and Severally Liable for Jane Doe (J.R.F.)'s Damages.

75.     The venture or ventures in which Defendant participated in were direct, producing, and proximate causes of the injuries and damages to Jane Doe (J.R.F.)

76.     Under the TVPRA, Defendant is jointly and severally liable for all damages that a jury awards to Jane Doe (J.R.F.) for past and future losses she suffered as a proximate result of her sexual exploitation and trafficking.

*Jane Doe v. Second Street Investments, LLC, et al*                                          26

## CAUSE OF ACTION—SEX TRAFFICKING UNDER THE TVPRA

77.    Jane Doe (J.R.F.)  incorporates all previous allegations.

**I.    Count 1: Perpetrator liability under 18 U.S.C §1595(a) based on violation of 18 U.S.C §1591(a) (Franchisee Defendant)**

78.    Jane Doe (J.R.F..) is a victim of sex trafficking within the meaning of § 1591 and 1595(a) and is thus entitled to bring a civil action under 18 U.S.C §1595(a) against the "perpetrator" of any violation of the TVPRA.

79.    Franchisee Defendant is a perpetrator within the meaning of 18 U.S.C §1595(a) because they:

   a. violated 18 U.S.C §1591(a)(1) when, through the acts and omissions described throughout this Complaint, they harbored individuals (including Jane Doe (J.R.F.)) knowing or in reckless disregard of the fact that the victims would be caused, through force, coercion, or fraud, to engage in commercial sex acts while at the Subject property.

   b. violated 18 U.S.C §1591(a)(2) when, through the acts and omissions described throughout this Complaint, they knowingly received financial benefit by knowingly assisting, supporting, or facilitating a venture that was engaged in violations under 18 U.S.C §1591(a)(1) at the Subject property.

80.    Violations of 18 U.S.C §1595(a) by Franchisee Defendant as "perpetrator" operated, jointly, with other unlawful acts and omissions alleged in this Complaint, to cause Jane Doe (J.R.F.) to suffer substantial physical and psychological injuries and other damages because of being trafficked and sexually exploited at the Subject property.

**II.    Count 2: Beneficiary Liability under §1595 (a) of the TVPRA.**

81.    Jane Doe (J.R.F.) is a victim of sex trafficking within the meaning of 18 U.S.C §§ 1591 and 1595(a) and is thus entitled to bring a civil action under the

*Jane Doe v. Second Street Investments, LLC, et al*                                    27

"beneficiary" theory in 18 U.S.C §1595(a) against anyone who knowingly benefited from participation in a venture that the person knew or should have, with reasonable diligence, known was engaged in a violation of the TVPRA.

82.     Through acts and omissions described throughout this Complaint, Defendant received a financial benefit from participating in a venture with traffickers, including Jane Doe (J.R.F.)'s trafficker, despite the fact that each defendant knew or should have known that these traffickers, including Jane Doe (J.R.F.)'s trafficker, were engaged in violations of 18 U.S.C §1591(a)(1) and 18 U.S.C §1591(a)(2). Thus, Defendant is liable as a beneficiary under 18 U.S.C §1595(a).

83.     Violations of 18 U.S.C §1595(a) by Defendant "beneficiary" operated, jointly, with other unlawful acts and omissions alleged in this Complaint, to cause Jane Doe (J.R.F.) to suffer substantial physical and psychological injuries and other damages because of being trafficked and sexually exploited at the Defendant's hotel property.

## DISCOVERY RULE

84.     To the extent Defendant asserts an affirmative defense of limitations, Jane Doe (J.R.F.) invokes the discovery rule. At the time she was harmed and through at least December 2014, Jane Doe (J.R.F.) was under coercion and control of traffickers who abused and manipulated her. Thus, Jane Doe (J.R.F.) did not discover and could not reasonably have discovered the legal cause of her injuries more than ten years before she filed this lawsuit. While she was under the control of her traffickers, Jane Doe (J.R.F.) — through no fault of her own—lacked the information to bring claims because she did not

know both her injuries and the cause of her injuries. This lack of information was due to no fault on the part of Jane Doe (J.R.F.) but rather was a direct result of Jane Doe (J.R.F.) being kept under the control of her traffickers, which Defendant facilitated.

85. At the time Jane Doe (J.R.F.) was harmed, she did not know that she was the victim of human trafficking as that term is defined by law, that her injuries arose from being trafficked at Defendant's hotel or that she was a person trafficked, much less that she was being victimized by a human trafficking venture, and she did not discover and was not in a position to discover the legal cause of her injuries, more than ten years before suit was filed.

86. To the extent Defendant asserts an affirmative defense of limitations, Jane Doe (J.R.F.) invokes the doctrine of equitable tolling because, as a result of being a victim of trafficking, Jane Doe (J.R.F.) faced extraordinary circumstances, which arose through no fault of her own, that prevented her from pursuing her legal remedies including but not limited to the filing of a lawsuit, and those circumstances did not end more than 10 years before Jane Doe (J.R.F.) filed this lawsuit.

87. To the extent Defendant asserts an affirmative defense of limitations, Jane Doe (J.R.F.) also invokes the continuing tort doctrine because this lawsuit arises out of a pattern of continuous and ongoing tortious conduct.

88. Jane Doe (J.R.F.) was subject to continuous trafficking at the Subject Hotel through at least December 2014, which is not more than 10 years before Jane Doe (J.R.F.) filed this lawsuit.

*Jane Doe v. Second Street Investments, LLC, et al*                                    29

89.     This continuous trafficking resulted from Defendant's continuous facilitating of trafficking at the Subject Hotel named herein and Defendant's ongoing venture with criminal traffickers.

## **DAMAGES**

90.     Defendant's acts and omissions, individually and collectively, caused Jane Doe (J.R.F.) to sustain legal damages.

91.     Defendant is liable for all past and future damages sustained by Jane Doe (J.R.F.).

92.     Jane Doe (J.R.F.) is entitled to be compensated for personal injuries and economic damages, including:

  a. Actual damages (until trial and in the future);

  b. Incidental and consequential damages (until trial and in the future);

  c. Mental anguish and emotional distress damages (until trial and in the future);

  d. Lost earnings and lost earning capacity (until trial and in the future);

  e. Necessary medical expenses (until trial and in the future);

  f. Life care expenses (until trial and in the future);

  g. Physical pain and suffering (until trial and in the future);

  h. Physical impairment (until trial and in the future);

  i. Exemplary/Punitive damages;

  j. Attorneys' fees;

  k. Costs of this action; and

l. Pre-judgment and all other interest recoverable.

## **JURY TRIAL**

93.     Jane Doe (J.R.F.) demands a jury trial on all issues.

## **RELIEF SOUGHT**

94.     WHEREFORE, Jane Doe (J.R.F.) prays that this case be set for trial before a jury and that, upon a final hearing of the cause, judgment be entered for Jane Doe (J.R.F.) against Defendant for the actual, compensatory, and punitive damages as the evidence may show, and the jury may determine to be proper, together with the costs of suit, prejudgment interest, post-judgment interest, and such other and further relief to which Jane Doe (J.R.F.) may, in law or in equity, show herself to be justly entitled.

Dated:  December 30, 2024                                  Respectfully submitted,

                                                                          By: /s/ David Henderson
                                                                          David Henderson, ABA #9806014
                                                                          LAW OFFICES OF DAVID HENDERSON
                                                                          Attorney for Jane Doe (J.R.F.)